Adriana Cara [SBN #221915]
adriana.cara@fisherbroyles.com
FISHERBROYLES, LLP
2244 Faraday Avenue, PMB
Carlsbad, CA  92008
Bus:  760-448-5669
Fax:  760-448-5687

Timothy L. Moore, Esq.[SBN # 305168]
timothy.moore@fisherbroyles.com
FISHERBROYLES, LLP
811 Mason Street
San Francisco, CA 94108
Bus: 619-678-1588
Fax: 619-275-7479

Attorneys for Plaintiffs,
ROBERT FLEMING and R AND C OILFIELD SERVICES, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT FLEMING, an individual and R AND C OILFIELD SERVICES, LLC, an Oklahoma limited liability company,<br><br>       Plaintiffs,<br><br>vs.<br><br>WIND ENERGY TRANSPORT, LLC, a California  limited liability company, and DOES 1 through 50, inclusive,<br><br>       Defendants. | Case No. 8:20-CV-2125<br><br><br>COMPLAINT FOR DAMAGES<br><br>**DEMAND FOR JURY TRIAL** |

# I. **INTRODUCTION**

1.     Plaintiff  Robert Fleming ("Plaintiff Fleming") brings this lawsuit against Defendant WIND ENERGY TRANSPORT, LLC, a California  limited liability company ("Defendant" or "WET") to challenge, among other things, Defendant's unlawful misclassification of Plaintiff Fleming, a commercial truck driver, as an independent contractor.  Defendant classified Plaintiff Fleming as an independent contractor rather than an employee in order to avoid its wage and hour obligations to Plaintiff under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA"). As a result of its unlawful misclassification of Plaintiff, Defendant has failed to pay Plaintiff Fleming minimum wages pursuant to the FLSA and has unlawfully deducted business expenses from Plaintiff Fleming's wages that WET was legally required to bear.  When Plaintiff Fleming asked for the timely payment of his wages, WET terminated him in blatant violation of the FLSA's anti-retaliation provisions, which forms the basis of Plaintiff Fleming's claim for retaliation hereunder.  Plaintiff Fleming seeks to recover monetary damages, liquidated damages, prejudgment interest, and civil penalties and costs, including reasonable attorneys' fees, as a result of Defendant's FLSA violations. Plaintiff Fleming is also entitled to recover emotional distress and punitive damages under the FLSA for Defendant's retaliatory discharge of Plaintiff Fleming on the heels of his request for timely payment of his wages.

2.     Alternatively, Plaintiff R AND C OILFIELD SERVICES, LLC ("Plaintiff R and C Oilfield"), of which Plaintiff Fleming is a principal,  seeks to recover damages and attorney's fees resulting from Defendant's breach of the contract entered into between WET and Plaintiff R and C Oilfield wherein Plaintiff agreed to and did transport cargo on WET's behalf.   WET failed to pay Plaintiff R and C Oilfield all monies owed to Plaintiff R and C Oilfield for the performance of its services and shifted certain business costs to Plaintiff R and C Oilfield in violation of the contract's express terms.

## II.  JURISDICTION AND VENUE

3.  This Court has subject matter jurisdiction over Plaintiff Fleming's claims under the FLSA because, *inter alia*, they are brought pursuant to 29 U.S.C. § 216(b) and because they raise a federal question pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff R and C Oilfield's California breach of contract and *quantum meruit* claims pursuant to 28 U.S.C. § 1367 because, *inter alia*, those claims are so related to the claims asserted under the FLSA that they form part of the same case and controversy.

4.  This Court also has subject matter jurisdiction over Plaintiffs' claims on diversity jurisdiction grounds pursuant to 28 U.S.C. § 1332.  As alleged *infra*, Plaintiff Fleming is a citizen of Florida and Plaintiff R and C Oilfield's sole member, Plaintiff Fleming, is a citizen of Florida. Plaintiffs allege on information and belief that the members of Defendant (a California limited liability company) are not citizens of Oklahoma or Florida.  The amount in controversy exceeds $75,000, exclusive of interests and costs.

5.  Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant resides in this judicial district, because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, because Defendant directed and controlled Plaintiffs in this judicial district, and because Defendant is subject to this Court's personal jurisdiction with respect to this action.

## III.  PARTIES

6.  Plaintiff ROBERT FLEMING is currently a resident of Sebring, Florida and a citizen of Florida.   Plaintiff was employed by Defendant from March 10, 2020 to May 7, 2020, and during this timeframe was a resident of Colorado Springs, Colorado. Throughout his employment with Defendant, Plaintiff was an employee within the meaning of the FLSA.

COMPLAINT FOR DAMAGES AND JURY DEMAND

7. Plaintiff R AND C OILFIELD SERVICES, LLC is an Oklahoma limited liability company whose principal place of business is 5030 N May Ave, Suite 185, Oklahoma City, OK 73112. Plaintiff ROBERT FLEMING is the sole member of R AND C OILFIELD SERVICES, LLC, and is a citizen of the State of Florida.

8. Defendant, WIND ENERGY TRANSPORT, LLC is a California limited liability company, whose principal place of business is 18063 Redondo Circle, Huntington Beach CA 92648, and which does business within this judicial district. Plaintiffs allege on information and belief that the members of Defendant, WIND ENERGY TRANSPORT, LLC are not citizens of Oklahoma or Florida.

9. Defendant, WIND ENERGY TRANSPORT, LLC is an employer within the meaning of the FLSA, and employs individuals who are engaged in interstate commerce. Defendant is, and was at all times relevant hereto, engaged in the interstate transportation of wind turbine assemblies including blades, nacelles, hubs and tower sections across the United States, and employed Plaintiff Fleming as a truck driver for that purpose.

10. The true names and capacities of Defendants DOES 1 through 50 ("DOES") are unknown to Plaintiffs at this time, and Plaintiffs therefore, sue DOES under fictitious names. Plaintiffs are informed and believe, and thereon allege, that each DOE is highly responsible in some manner for the events and happenings referred to herein, and legally caused the injuries and damages alleged in this Complaint. Plaintiffs are informed and believe, and thereon allege, that each DOE would include, but not be limited to, certain DOES who were and are managers, supervisors, executives, and/or employees of Defendant who exercised economic control and control over the nature and structure of the employment relationship between Defendant and Plaintiffs, thereby making certain DOES employer(s) under the FLSA, 29 U.S.C. § 203(d). The pleadings will be amended as necessary to obtain relief against DOES when the true names are ascertained, or as permitted by law or by the Court.

11. There exists, and at all times herein mentioned existed, a unity of interest and ownership between the named Defendant and DOES, such that any corporate

COMPLAINT FOR DAMAGES AND JURY DEMAND

individuality and separateness between the named Defendant and DOES has ceased, and the named Defendant and DOES are *alter ego* one another in that the named Defendant and DOES effectively operate as a single enterprise, or are the mere instrumentalities of one another.

12.  At all material times herein, Defendant and DOES were the agent, servant, co-conspirator and/or employer of each other, acted within the purpose, scope, and course of said agency, service, conspiracy and/or employment and with the express and/or implied knowledge, permission, and consent of the remaining defendants, and ratified and approved the acts of the other defendants. However, each of these allegations are deemed alternative theories whenever not doing so would result in a contradiction with the other allegations.

13.  Whenever reference is made in this Complaint to any act, deed, or conduct of Defendant, the allegation means that Defendant engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of Defendant's ordinary business and affairs.

## IV.  **FACTUAL BACKGROUND**

### A. **Defendant's Business Model**

14.      WET is a trucking company that provides transportation of property services to its customers in the United States. WET operates and runs its trucking business out of facilities located in Huntington Beach, California. In order to run its transportation business, WET hires individuals who drive trucks to move cargo for WET on a regular basis. The cargo they transport belongs to WET's customers, who do not deal directly with WET's hired drivers.

COMPLAINT FOR DAMAGES AND JURY DEMAND

15.    Drivers must supply their own trailer to transport the cargo; if they do not own a trailer they may lease one from WET. As a condition of working for WET, drivers are required to sign a form Independent Contractor Agreement (Leased Operators) that WET unilaterally prepared (hereafter, "the Agreement"), under which drivers are made to acknowledge their status as independent contractors. Under the Agreement, drivers are made to assume WET's responsibilities to pay operational expenses, such as those for administrative fees, equipment, plates, mechanical repairs, tolls, the wages of other employees, and the costs of workers' compensation/occupational accident insurance for the drivers (collectively "Operational Expenses").

16.    Recital C of the Agreement states that drivers "are engaged in an independent calling", and Section 1, states that the parties wish to "avoid creating an indicia of control which would otherwise frustrate the intent of the parties to create an independent contractor relationship." However, in actual practice, WET significantly controls the details of the work performed by drivers like Plaintiff. Fleming, as alleged below.

17.    WET imposes minimal driving and licensing qualifications on its drivers. No special skills outside of the ability to drive a commercial truck are required. However, WET employs an application process that enables it to greatly control the individual drivers. For instance, drivers are required to complete a form titled "Commercial Driver Employment History for Truckers". WET also performs or reserves the right to perform on each individual driver a full background check and employment eligibility verification, including a credit check, a criminal history check, an employment check, and a drug test.

18.    WET requires drivers to obtain certain types of insurance and specific coverage levels on all trucks and trailers operated and cargo transported by drivers as a condition for working for WET. In actuality, WET, itself, obtains and provide these insurance coverages and charges them to drivers.

19.    In addition, WET verifies drivers' equipment maintenance and repair, takes measures to secure the proper securement and transport of freight. (See Section 2.d of the Agreement), and requires drivers to undergo training as part of their duties. WET also

requires its drivers to affix its logo on their trucks during the term of the Agreement. Further, WET strictly imposes various policies, instructions, work rules and regulations on drivers, disobedience of which would result in worker discipline, including reprimands, warnings, suspensions, and up to immediate termination. WET strictly oversees recordkeeping requirements by which drivers are required to document, on forms generated by WET, drivers' work and hours in a manner and frequency dictated by WET. WET keeps and maintains these records. (See *Id*.) WET also strictly require drivers to do truck inspections before and after transporting each load in a matter dictated by WET, and to perform other maintenance inspections, subject to suspension and even termination for disobedience.

20.   WET also controls the assignment and dissemination of loads to each driver, and directs drivers' work from WET's Huntington Beach office. In addition, WET unilaterally sets drivers' pay rates, which are not negotiable as would be expected in a true independent contractor relationship.(See Section11 of the Agreement, which provides, in part, "COMPANY is responsible for booking rates with customers and collecting all payments. COMPANY will provide a rate to the CONTRACTOR and will deduct 20% of said rate to CONTRACTOR as compensation."

21.   Drivers working for WET are dependent on WET for their livelihood. The days and hours worked by drivers are controlled by WET. Drivers are provided load assignments, and must continually contact WET during the transport to receive instructions. Drivers are required to be available at all times by mobile phone to receive load instructions. Drivers who work for WET are integrated into WET's regular business and are essential to WET's day-to-day operations. Drivers are not engaged in a separate business or profession, but instead work exclusively for WET on a long-term basis, rather than periodically, and regularly work for WET at least 5 days a week. In fact, the Agreement expressly provides for an initial term of one year. (See Section 26 of Agreement ("The term of this Agreement shall be one year from the date hereof. Thereafter, it shall automatically renew for successive one (1)-year periods [unless terminated as otherwise

provided for in the Agreement].").) Significantly, the Agreement also contains a non-compete provision, which prohibits drivers like Mr. Fleming from soliciting any  WET customers they come into contact with in the course of performing their duties under the Agreement during the contract term and for a period of 12 months thereafter. (*See* Section 22.a of the Agreement.)

22.    WET maintains the right to terminate and can easily terminate drivers at any time for seemingly insignificant grounds without giving drivers the opportunity to cure any alleged violations.(See Section 26.d of the Agreement, which permits WET to terminate drivers for failing to meet "performance metrics.")

### B. <u>Mr. Fleming's Employment and WET's Termination Thereof.</u>

23.  WET hired Mr. Fleming as a driver and required him to sign contract in the form of the Agreement as a condition of his employment ("Fleming Agreement").  The Fleming Agreement with the appendices referenced therein are attached collectively to this Complaint as **Exhibit 1**; Mr. Fleming executed the Fleming Agreement on March 10, 2020. However, WET did not sign the Fleming Agreement; indeed, many areas of the Fleming Agreement, such as the effective date, were left blank.

24.  As part of its employment screening process, WET required Mr. Fleming to complete a form titled "Commercial Driver Employment History (Truckers), which he submitted to WET on the above date, as well.

25. The Fleming Agreement incorporates Appendix C, which document provides two payment options for compensation earned under the Fleming Agreement. The first option, which Mr. Fleming selected, expressly states as follows: "CONTRACTOR will be paid fifteen (15) days after all paperwork is submitted on each Load. All paperwork included BOL [bill of lading or "BOL"], Delivery Ticket, Pre-Load Inspection sheets and any other paperwork tied to that particular load." Further, the Fleming Agreement contains an integration clause, titled "Entire Agreement" (See Section 31 of the Agreement, which provides that the Fleming Agreement with its exhibits contain "the entire understanding of

FISHERBROYLES

the Parties" and that "no extrinsic evidence may be introduced to reform this Agreement in any judicial or arbitration proceeding involving this Agreement.") Notably, the Fleming Agreement states that "The Agreement may not be amended or modified except by mutual written agreement." (*Id*.) Plaintiff Fleming delivered four loads for WET before WET terminated his employment (see allegations, *infra*), as follows:

- Aberdeen, South Dakota to Woodward, Oklahoma (delivered 4-24-20);
- Enid, Oklahoma to Goff, Kansas (delivered 4-28-20);
- Enid, Oklahoma to Goff, Kansas (delivered 5-2-20); and
- Enid, Oklahoma to Goff, Kansas (delivered 5-6-20)

26.     In advance of transporting Load No. 1, Plaintiff Fleming hauled a WET trailer that was in disrepair from Fairfield, Texas to Aberdeen, South Dakota. Plaintiff Fleming was not responsible for the condition of the trailer, and yet WET had the temerity to require Plaintiff Fleming to bear half the cost of the required permit fees to haul the vehicle. Further, this endeavor took six (6) hours of Plaintiff Fleming's time and yet WET never compensated him for his work. Plaintiff  Fleming, who was a Colorado Springs, Colorado resident while the Agreement was in effect, was required to drive from his residence to the above-described loading destination.

27.     On April 29, 2020, Mr. Fleming sent Dani Rothenberg of WET an email to seek assurances that WET would provide timely payment of Load No.1, listed above, within the 15 days provided for in the Fleming Agreement.(See Appendix C.) In response to Mr. Fleming's inquiry, Mr. Rothenberg replied that same date by email, stating that payment terms were "net 30" despite the express contract provisions to the contrary. On May 7, 2020, shortly after asking for timely payment of his compensation, Mr. Fleming received an email from Mr. Rothenberg terminating his employment effective immediately "pursuant to Section 26(d) . . . due to [his purported failure] to comply with the performance metrics and selection criteria" imposed by the Company."

28.     Regardless of Mr. Fleming's alleged performance deficiencies (there were none), Mr. Fleming was entitled to be fully compensated for his work related to the above loads. However, WET failed to pay Plaintiff Fleming all amounts due under the terms of the Fleming Agreement at the date of his termination.

29.     WET continues to owe Mr. Fleming payment in connection with the following:

**a. Load No. 1–**

i.     *Owed $1,027.59* - Permit charge appears to include permit to haul WET empty trailer to loading site; WET calculations include an "advance" which is inaccurate because Mr. Fleming had no company credit and paid his own expenses; WET calculation includes $300 overcharge for insurance; and

ii.     *Owed $ $4,935.00*– WET failed to pay Mr. Fleming detention charges, calculated as follows:

▪ Detention pay is $150 per hour, with 24 hours free on loading and unloading locations. The clock begins to run immediately upon arrival to the unload location.

▪ Mr. Fleming arrived on the Monday, April 21, 2020 delivery; so the clock began to run the following Tuesday, April 22, 2020 at 7 a.m.  Detention pay is owed for the following days:

Tuesday, April 21, 2020: $1,500

Wednesday, April 22, 2020: $1,500

Thursday, April 23, 2020 $1,500

Friday, April 24, 2020 $435 ($150 x 2.9hours)

**b. Load No. 2** – Owed $1,200.00–

i.   Additional escort charges of $1,200.00 incurred due to WET not providing BOL's on time, load could not be hauled on Friday as planned and pilot cars had to be paid for Fri-Sun before hauling on Monday;

**c.  Load No. 3** – Owed $1210. 82

i.   Permit Discrepancy($10.82); and

ii.  Detention Pay($1,200) – WET failed to pay Mr. Fleming detention charges, calculated as follows:

▪ Detention pay is $150 per hour, with 24 hours free on loading and unloading locations. The clock begins to run immediately upon arrival to the unload location.

▪ Mr. Fleming arrived on Wednesday, April 29, 2020 at 8:00 a.m. and was loaded at 4:00 p.m. on Thursday, April 30th 2020; so detention pay is owed in the amount of $1,200; and

**d.  Load No. 4** – Credit Owed to WET $2.60 – Permit Discrepancy (overpayment)

30.    Pursuant to Section 10.B of the Fleming Agreement and WET's Detention Summary, which document was provided to all of WET's "Leased Operators (i.e., its misclassified truck drivers)," WET must wait for the customer (in this case, GE) to review, approve and pay any detention amounts. As part of the process, WET is required to submit a detention claim with GE and GE will either approve or deny any request for detention pay.

31.    Plaintiff Fleming asked WET previously for information regarding the amounts WET billed GE for detention on the above-referenced loads, and whether GE approved said amounts;  WET declined to respond to Plaintiff Fleming's request.

32.    Significantly, WET has a practice of failing to provide settlement paperwork for detention payments to its truck drivers unless they take the affirmative action of asking

for it. Such documentation is required to include the payment per load completed and any related deductions. Despite the fact that settlement paperwork should, as a matter of fairness, permit truck drivers to request and review underlying documentation to confirm the accuracy of such settlement paperwork, the Fleming Agreement attempts to preclude Plaintiff Fleming from obtaining same, as noted by the following contract language: "CONTRACTOR hereby waives any right to obtain copies of COMPANY records." Such language appears to include the right to access and review pertinent WET records to ensure that the calculations set forth in the settlement paperwork is accurate. (See Section 17 of Fleming Agreement.)

## FIRST CAUSE OF ACTION

### Failure to Pay Minimum Wage

### Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*

(Brought by Plaintiff Fleming Against Defendant)

33.     Plaintiffs reallege and incorporate the above paragraphs as though fully set forth

herein.

34.     Defendant violated the FLSA by knowingly failing to maintain records of all  hours Plaintiff Fleming worked in violation of 29 U.S.C. § 211(c) and 29 C.F.R. § 516.2.

35.     Defendant further violated the FLSA by knowingly failing to compensate Plaintiff Fleming for all hours worked and by knowingly failing to pay Plaintiff Fleming the federally mandated minimum wage in violation of 29 U.S.C. § 206 for all hours worked.

36.     Defendant further violated 29 U.S.C. § 206 by deducting Operational Expenses from Plaintiff Fleming's wages.  29 C.F.R. § 531.35 emphasizes that payments

FISHERBROYLES
A LIMITED LIABILITY PARTNERSHIP

that are not made "free and clear" cannot constitute wages under the FLSA. Section 531.35 provides, in pertinent part, as follows:

> Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash.

37.     Here, WET required Mr. Fleming to pay thousands of dollars in Operational Expenses. These costs that should have been borne exclusively by WET as it was Mr. Fleming's employer at the time those expenses were incurred. The Fleming Agreement does not provide Mr. Fleming with a right of reimbursement for Operational Expenses. Further, WET"s failure to make the contract payments "free and clear" negates any assertion on WET's part that the payments under the Fleming Agreement constitute wages.

38.     Defendant's actions were willful. Accordingly, Defendant is liable under 29 U.S.C. § 216(b) to Plaintiff Fleming for liquidated damages in an amount equal to the wages Defendant failed to pay Defendant Fleming as a result of the foregoing violation of 29 U.S.C. § 206.

39.     Plaintiff Fleming is entitled to all of the unpaid wages, plus an additional equal amount as liquidated damages, court costs, attorneys' fees and expenses that he expends in successfully bringing this action to recover his unpaid wages and any other relief deemed appropriate by the Court.

///

///

## **SECOND CAUSE OF ACTION**

### **Retaliation**

### **Fair Labor Standards Act, 29 U.S.C.§ 215**

(Brought by Plaintiff Fleming Against Defendant)

40.     Plaintiffs reallege and incorporate the above paragraphs as though fully set forth herein.

41.     Plaintiff Fleming was terminated on the heels of asking whether he could expect to receive timely his wages in connection with work performed related to Load No. 1 (see above allegations) .  Days after making this inquiry, WET discharged Plaintiff Fleming on the stated pretext that Plaintiff Fleming failed to meet WET's performance metrics.  In fact, WET elected to discharge Plaintiff Fleming because he exercised his right under the FLSA to request timely payment of his wages.

42.     Defendant acted or failed to act as herein alleged with malice, oppression and/or reckless indifference to the protected rights of Plaintiff Fleming. As herein alleged, Defendant's acts and/or omissions were also reprehensible, fraudulent and in blatant violation of the FLSA. Plaintiff Fleming is thus entitled to punitive damages in an amount to be determined according to proof.

43.     Plaintiff Fleming has suffered humiliation, mental anguish, anxiety and emotional and physical distress, as a result of Defendant's retaliatory, malicious and reckless conduct, thereby entitling him to emotional distress damages in an amount according to proof.

44.     Plaintiff Fleming is also entitled to recover compensatory damages, front pay, and attorney's fees for WET's retaliatory termination of his employment, as well as any other relief deemed appropriate by the Court.

///

///

### <u>THIRD CAUSE OF ACTION</u>

**Breach of Written Contract**

(Brought by Plaintiff R and C Oilfield Against Defendant)

45.     Plaintiffs reallege and incorporate the above paragraphs as though fully set forth herein.

46.     On or about March 10, 2020,  Plaintiff R and C Oilfield and Defendant entered into the Fleming Agreement, a copy of which is attached hereto as **Exhibit 1**. By the terms of said written agreement, Defendant agreed to retain Plaintiff R and C Oilfield for an initial term of one year, subject to narrowly defined exceptions set forth in Section 26 of the Fleming Agreement.  Further, the Fleming Agreement, among other things, required Defendant to pay Plaintiff R and C Oilfield detention payments pursuant to Section 10.B of the Fleming Agreement.

47.     The consideration set forth in the agreement was fair and reasonable.

48.     Plaintiff R and C Oilfield has performed all conditions, covenants, and promises required by it on its part to be performed in accordance with the terms and conditions of the Fleming Agreement.

49.     On or about May 7, 2020, Defendant breached said agreement by failing to pay Plaintiff R and C Oilfield all amounts due under the Fleming Agreement, including the detention payments, and then terminating the Fleming Agreement prematurely and without any contractual basis therefor.

50.     By reason of Defendant's breach of the Fleming Agreement as herein alleged, Plaintiff R and C Oilfield has suffered damages in the sum of at least $200,000, which amount is exclusive of attorney's fees.

51.     By the terms of the Fleming Agreement, Plaintiff R and C Oilfield is entitled to recover the aforesaid damages, as well as reasonable attorney's fees and costs incurred in the enforcement of the provisions of the Fleming Agreement, and prejudgment interest. By reason of the aforementioned breach by the Defendant, Plaintiff R and C Oilfield has

been forced to secure the services of Stanley & Schmitt, PC and FisherBroyles, LLP to enforce its rights under the Fleming Agreement.

## FOURTH CAUSE OF ACTION

### Breach of Oral Contract

(Brought by Plaintiff R and C Oilfield Against Defendant)

52.     Plaintiffs reallege and incorporate the above paragraphs as though fully set forth herein.

53.     Plaintiff R and C Oilfield alleges, in the alternative to its breach of written contract claim against Defendant, that Plaintiff R and C Oilfield is entitled to recover damages against Defendant under a breach of oral contract cause of action.

54.     On or about March 10, 2020, Plaintiff R and C Oilfield and Defendant entered into an oral contract, which specific terms are evidenced by the Fleming Agreement, a copy of which is attached hereto as **Exhibit 1**. By the terms of said oral agreement, Defendant agreed to retain Plaintiff R and C Oilfield for an initial term of one year, subject to narrowly defined exceptions as described in Section 26 of the Fleming Agreement.  Further, the oral agreement, among other things, required Defendant to pay Plaintiff R and C Oilfield detention payments as described in Section 10.B of the Fleming Agreement.

55.     The consideration agreed to by the parties' oral agreement was fair and reasonable.

56.     Plaintiff R and C Oilfield has performed all conditions, covenants, and promises required by it on its part to be performed in accordance with the terms and conditions of the oral agreement.

57.     On or about May 7, 2020, Defendant breached said oral agreement by failing to pay Plaintiff R and C Oilfield all amounts due under the oral agreement, including the detention payments, and then terminating the oral agreement prematurely and without any contractual basis therefor.

58.     By reason of Defendant's breach of the oral agreement as herein alleged, Plaintiff R and C Oilfield has suffered damages in the sum of at least $200,000, which amount is exclusive of attorney's fees.

59.     By the terms of the oral agreement, Plaintiff R and C Oilfield is entitled to recover the aforesaid damages, as well as reasonable attorney's fees and costs incurred in the enforcement of the provisions of the oral agreement, and prejudgment interest. By reason of the aforementioned breach by the Defendant, Plaintiff R and C Oilfield has been forced to secure the services of Stanley & Schmitt, PC and FisherBroyles, LLP to enforce its rights under oral agreement.

## FIFTH CAUSE OF ACTION

### *Quantum Meruit*

(Brought by Plaintiff R and C Oilfield Against Defendant)

60.     Plaintiffs reallege and incorporate the above paragraphs as though fully set forth herein.

61.     Plaintiff R and C Oilfield alleges, in the alternative to its breach of written and oral contract claims against Defendant, that Plaintiff R and C Oilfield is entitled to recover in *quantum meruit* if it is determined that either a valid and enforceable written or oral contract does not exist, the existing written or oral contract does not cover the subject matter of the dispute between Plaintiff R and C Oilfield and Defendant, Plaintiff R and C Oilfield performed services that were outside of or over and above those contemplated by the existing written or oral contract, or the existing written or oral contract is void, invalid, or unenforceable.

62.     On March 10, 2020 through May 7, 2020, Plaintiff R and C Oilfield provided services in good faith to Defendant as alleged above.  The services were provided at Defendant's behest and Defendant knowingly and voluntarily accepted and benefited from the services that Plaintiff R and C Oilfield provided.

63.     Defendant was aware and knew that Plaintiff R and C Oilfield was not providing the services gratuitously.

64.     Defendant knew that Plaintiff R and C Oilfield reasonably expected to be compensated for the services provided.

65.     On May 7, 2020, Plaintiff R and C Oilfield completed the work and, thereafter, demanded that Defendant compensate Plaintiff R and C Oilfield for the reasonable value of the services provided.

66.     The reasonable value of the services provided by Plaintiff R and C Oilfield is $9,271, plus interest, costs, and expenses.

67.     As a result of Defendant's refusal to pay Plaintiff R and C Oilfield for the reasonable value of the services provided, Plaintiff R and C Oilfield has been damaged in the amount $9,271, plus interest, costs, and expenses

68.     Plaintiff R and C Oilfield is entitled to recover the reasonable value of services rendered by Plaintiff R and C Oilfield to Defendant, to be determined according to proof at trial, but which Plaintiff believes is equal to $9,271; prejudgment interest on the said sum at the maximum rate allowed by law from May 7, 2020 to the date of judgment herein; an award of post-judgment interest for the maximum amount allowed by law; costs; reasonable attorneys' fees; and for any and all other relief the Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request the following relief:

### First Cause of Action

Plaintiff Fleming requests the following relief:

a. All of the unpaid wages in an amount according to proof at trial, plus an additional equal amount as liquidated damages;

   b. Court costs, attorneys' fees and expenses that Plaintiff Fleming expends in successfully bringing this action to recover his unpaid wages; and

   c. Ay other relief deemed appropriate by the Court.

Second Cause of Action

Plaintiff Fleming requests the following relief:

   a. Compensatory, front pay, emotional distress and punitive damages in an amount according to proof at trial;

   b. Court costs, attorneys' fees and expenses that Plaintiff Fleming expends in successfully bringing this action; and

   c. Ay other relief deemed appropriate by the Court.

Third and Fourth Causes of Action

Plaintiff R and C Oilfield requests the following relief:

   a. Contractual damages in an amount according to proof at trial and prejudgment interest;

   b. Court costs, attorneys' fees and expenses that Plaintiff Fleming expends in successfully bringing this action; and

   c. Ay other relief deemed appropriate by the Court.

Fifth Cause of Action

Plaintiff R and C Oilfield requests the following relief:

   a. The reasonable value of services rendered by Plaintiff R and C Oilfield to Defendant, in an amount according to proof at trial, which Plaintiff believes is equal to $9,271 and prejudgment and post-judgement interest on said sum;

   b. Court costs, attorneys' fees and expenses that Plaintiff R and C Oilfield expends in successfully bringing this action; and

   c. Ay other relief deemed appropriate by the Court.

FISHERBROYLES, LLP

Dated: November 4, 2020.

*/s/Adriana Cara*
Adriana Cara, Esq.
CA Bar No. 221915
2244 Faraday Avenue, PMB
Carlsbad, CA 92008
T: 760-448-5669
F: 760-448-5687
Adriana.Cara@fisherbroyles.com
*Attorneys for Plaintiffs,*
*ROBERT FLEMING and R AND C OILFIELD*
*SERVICES, LLC*

*/s/ Timothy Moore*
CA Bar No. 305168
811 Mason Street
San Francisco, CA 94108
T: 619-678-1588
F: 619-275-7479
timothy.moore@fisherbroyles.com
 *Attorneys for Plaintiffs,*
*ROBERT FLEMING and R AND C OILFIELD*
*SERVICES, LLC*

COMPLAINT FOR DAMAGES AND JURY DEMAND

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial of their claims by jury to the extent authorized by law.

Dated: November 4, 2020

FISHERBROYLES, LLP

*/s/Adriana Cara*
Adriana Cara, Esq.
CA Bar No. 221915
2244 Faraday Avenue, PMB
Carlsbad, CA 92008
T: 760-448-5669
F: 760-448-5687
Adriana.Cara@fisherbroyles.com
*Attorneys for Plaintiffs,*
*ROBERT FLEMING and R AND C OILFIELD*
*SERVICES, LLC*

*/s/ Timothy Moore*
CA Bar No. 305168
811 Mason Street
San Francisco, CA 94108
T: 619-678-1588
F: 619-275-7479
timothy.moore@fisherbroyles.com
 *Attorneys for Plaintiffs,*
*ROBERT FLEMING and R AND C OILFIELD*
*SERVICES, LLC*